Image ID: D00008991D19

# SUMMONS

Doc. No. 8991

IN THE DISTRICT COURT OF Richardson COUNTY, NEBRASKA
Richardson County Courthouse
1700 Stone Street
Falls City NE 68355 2033

Thomas A Bartek v. Jackson National Life Insurance Company

Case ID: CI 13 175

TO: Jackson National Life Ins. Comp

**FILED BY**
Clerk of the Richardson District Court
10/30/2013

You have been sued by the following plaintiff(s):

Thomas A Bartek

Plaintiff's Attorney: Richard L Halbert
Address: 111 East 17th Street
P. O. Box 447
Falls City, NE 68355-0447
Telephone: (402) 245-4486

A copy of the complaint/petition is attached. To defend this lawsuit, an appropriate response must be served on the parties and filed with the office of the clerk of the court within 30 days of service of the complaint/petition. If you fail to respond, the court may enter judgment for the relief demanded in the complaint/petition.

Date: OCTOBER 30, 2013 BY THE COURT: Pamela Scott
Clerk

FIRST DISTRICT COURT SEAL RICHARDSON COUNTY, NEBRASKA

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE COMPLAINT/PETITION ON:

Jackson National Life Ins. Comp
Michael Wells, President
1 Corporate Way
Lansing, MI 48951

Method of service: Certified Mail

You are directed to make such service within ten days after the date of issue, and file with the court clerk proof of service within ten days after the signed receipt is received or is available electronically, whichever occurs first.



IN THE DISTRICT COURT OF RICHARDSON COUNTY, NEBRASKA

| | | |
|---|---|---|
| THOMAS A. BARTEK,<br><br>Plaintiff,<br><br>vs.<br><br>JACKSON NATIONAL LIFE INSURANCE COMPANY,<br><br>Defendant. | ) | CASE NO. CI 13 - 175<br><br>PETITION FOR DECLARATORY JUDGMENT |

FILED
Richardson Co. Dist Court
OCT 30 2013
Pamela Scott
CLERK OF DISTRICT COURT

COMES NOW the Plaintiff, Thomas A. Bartek, and for his cause of action against the Defendant, Jackson National Life Insurance Company, brings this Petition for Declaratory Judgment Action under Neb. Rev. Stat. § 25-21,149 et. seq., against the Defendant, and alleges and states as follows:

1. The Plaintiff is and was at all times relevant hereto a resident of Falls City, Richardson County, Nebraska and the primary beneficiary of a certain life insurance policy hereinafter described.

2. The Defendant is an insurance company duly licensed in the State of Nebraska which issued to Plaintiff's deceased wife, Kathryn J. Bartek, a FOUR HUNDRED THOUSAND DOLLAR ($400,000.00) "Term Life Policy #0073165880.

3. That in early March of 2012 Plaintiff contacted Defendant's agent regarding obtaining additional life insurance on his wife, Kathryn J. Bartek.

4. That the Barteks accepted the advice from Defendant's agent and Kathryn J. Bartek made application to Defendant on March 15, 2012 for a $250,000.00 renewable and convertible term life policy and provided to Defendant a medical history. On April 5, 2012 after discussing the premium difference between the $250,000.00 and the $400,000.00 policy with Defendant's agent, a request was made to increase the coverage to $400,000.00.





5. Thereafter the Defendant issued a policy for $400,000.00 to Kathryn J. Bartek on April 6, 2012 which was delivered to Plaintiff and his wife. On April 16, 2012 the Barteks made payment of the insurance policy premium which payment was thereafter delivered to, accepted, cashed and deposited by Defendant. Thereafter, Plaintiff and his wife received Defendant's above-described insurance policy. That a copy of the Jackson National Life Insurance Company life insurance policy #0073165880 is attached hereto and incorporated herein as Exhibit "A."

6. That all information given by the Barteks on the March 15, 2012 application and on the medical history provided was truthful as well as accurate and the Barteks had no reason to change any of the answers as set forth in the application for the reason the medical history was completely truthful when given.

7. That Kathryn J. Bartek was alive on the date of delivery of the policy and was "insurable as described in each part of the application" upon the completion of the applications.

8. That attached hereto and incorporated herein as Exhibit "B" is a copy of Kathryn J. Bartek's death certificate, indicating Kathryn J. Bartek died on June 23, 2013.

9. That following Kathryn J. Bartek's death, a copy of her death certificate was provided to Defendant's agent who forwarded the same to Defendant.

10. That on or about September 9, 2013, the Defendant denied Plaintiff's claim for death benefits under Defendant's Term Life Policy #0073165880.

WHEREFORE, Plaintiff prays for a Declaratory Judgment declaring the following:

A. That Defendant issued to Kathryn J. Bartek a Term Life Insurance Policy #0073165880 on April 6, 2012 for $400,000.00 and delivered said policy to Kathryn J. Bartek and Plaintiff.

B. That Kathryn J. Bartek and Plaintiff paid the first premium for said Term Life Policy to Defendant's agent on April 16, 2012, and that said payment was deposited by Defendant.

C. That Kathryn J. Bartek died on June 23, 2013.

D. That Plaintiff has filed a Proof of Loss with the Defendant for death benefits by virtue of the death of Kathryn J. Bartek.

E. That on September 9, 2012, Defendant wrongfully denied said claim made by Plaintiff for death benefits.

F. That Defendant is obligated to pay to Plaintiff the $400,000.00 death benefits by virtue of the death of Kathryn J. Bartek plus interest pursuant to Neb. Rev. Stat. §44-3,143.

G. Defendant is obligated to pay to Plaintiff all costs of prosecution of this claim per Neb. Rev. Stat. § 44-359 of the Nebraska Revised Statutes, including attorney fees, which are hereby requested and a hearing date on costs is requested to be set in the near future.

H. For such further relief this court deems just and equitable.

Dated this 30th day of October, 2013.

THOMAS A. BARTEK, Plaintiff

By: [signature]

Richard L. Halbert, #11659
Michael R. Dunn, #16825
Christopher C. Halbert, #22609
Halbert, Dunn & Halbert, L.L.C.
111 East 17th Street
Post Office Box 447
Falls City, Nebraska 68355-0447
Phone: (402) 245-4486

STATE OF NEBRSAKA )
)SS
COUNTY OF RICHARDSON )

Thomas A. Bartek, being first duly sworn, deposes and says that he is the Plaintiff in the above entitled action; that he has read the foregoing Petition for Declaratory Judgment and knows the contents thereof and that the facts stated therein are true, as he verily believes.

Thomas A. Bartek, Plaintiff

Subscribed in my presence and sworn to before me this 30th day of October, 2013.

GENERAL NOTARY - State of Nebraska
DONNA M. LOVENBURG
My Comm. Exp. April 12, 2015

Notary Public

EXHIBIT A






1 Corporate Way
Lansing, Michigan 48951
www.jackson.com




Thank you for choosing Jackson National Life Insurance Company. If You have any questions, please contact the Company at the Service Center address and telephone number shown on the Policy Data Page.

**THIS RENEWABLE AND CONVERTIBLE TERM LIFE INSURANCE POLICY OFFERED BY JACKSON NATIONAL LIFE IS A LEGAL CONTRACT BETWEEN YOU AND US. READ YOUR POLICY CAREFULLY.**

We agree to pay to the Beneficiary the Death Benefit and any other Policy benefits payable, less any Premium due, because of the Insured's death if the Insured dies while this Policy is in force. This agreement is subject to the terms of this Policy.

**NOTICE OF RIGHT TO EXAMINE POLICY**

YOU MAY RETURN THIS CONTRACT TO THE SELLING PRODUCER OR JACKSON NATIONAL WITHIN 20 DAYS (30 DAYS IF IT WAS PURCHASED AS A REPLACEMENT CONTRACT) AFTER YOU RECEIVE IT, AND THE COMPANY WILL REFUND THE PREMIUM PAID PLUS ANY FEE OR CHARGES DEDUCTED FROM THE PREMIUM, LESS THE AMOUNT OF ANY PARTIAL WITHDRAWALS.

RENEWABLE TERM LIFE INSURANCE TO AGE 95 WITH PREMIUM CHANGE PROVISION. MAXIMUM PREMIUMS AS SHOWN IN SCHEDULE. CONVERTIBLE PRIOR TO LATEST CONVERSION DATE SHOWN ON THE POLICY DATA PAGE. NONPARTICIPATING.

**This Contract is signed by the Company**

**President and Chief Executive Officer**

**Secretary**

## TABLE OF CONTENTS


| Provision | Page Number |
|---|---|
| POLICY DATA PAGE | 3 |
| DEFINITIONS | 5 |
| GENERAL PROVISIONS | 7 |
| OWNERSHIP AND BENEFICIARY PROVISIONS | 10 |
| CONVERSION PROVISIONS | 11 |
| DECREASING TERM PROVISIONS | 11 |
| DEATH BENEFIT PROVISIONS | 12 |
| SCHEDULE OF GUARANTEED ANNUAL PREMIUMS | 13 |

## POLICY DATA PAGE

| | |
|---|---|
| Policy Number: | 0073165880 |
| Insured: | Kathryn J Bartek |
| Insured's Age/Sex: | 54 FEMALE |
| Risk Classification: | PREFERRED PLUS |
| Guaranteed Premium Term: | 10 |
| Base Plan Premium: * | $674.00 |
| Initial Annual Premium: ** | $674.00 |
| Premium Mode: | ANNUAL |
| Death Benefit: | $400,000.00 |
| Issue Date: | April 6, 2012 |
| Policy Date: | April 6, 2012 |
| Latest Conversion Date: | April 6, 2022 |
| Issue State: | NE |
| Owner: | Kathryn J Bartek |
| Joint Owner: | As above, if applicable |
| Beneficiary(ies): | Thomas A Bartek |

* Subject to the Premium Change Provision. This Premium includes a $50.00 annual Policy fee.

** THE INITIAL ANNUAL PREMIUM INCLUDES THE BASE PLAN PREMIUM AND RIDER(S) PREMIUM, IF ANY.

For Premium modes other than annual, multiply the annual Premium by the appropriate modal factor given below to calculate the amount of Premium for the mode You selected:

Semi-Annual: 0.5100 Quarterly: 0.2700 Monthly: 0.0875

**If You elect to pay Premiums other than annually, the total Premiums paid will be greater than the annual Premium.**

## POLICY DATA PAGE (CONT'D)

| SCHEDULE OF RIDER(S) | EXPIRY DATE | PREMIUM |
|---|---|---|
| TERMINAL ILLNESS RIDER | April 6, 2053 | |
| Kathryn J Bartek | April 6, 2053 | |

Jackson National Life Service Center
P.O. Box 24068
Lansing, MI 48909-4068
1-800-644-4565

Express Mail:
Jackson National Life Service Center
1 Corporate Way
Lansing, MI 48951

## DEFINITIONS

The following are key words used in this Policy. They are important in describing both Your rights and Ours. When they are used, they are capitalized. As You read Your Policy, refer back to these definitions.

**ATTAINED AGE.** The Insured's age on the Policy Date plus the number of full years since the Policy Date.

**BENEFICIARY(IES).** The person(s) or entity(ies) designated to receive the Death Benefit Proceeds upon the death of the Insured.

**BUSINESS DAY.** Each day when Our Service Center is open for business.

**CONTESTABLE PERIOD.** A two-year period which begins on the Issue Date of the Policy or the date of Reinstatement of a lapsed Policy.

**DEATH BENEFIT.** The Death Benefit as shown on the Policy Data Page (or other amount based on the Decreasing Term Option).

**DEATH BENEFIT PROCEEDS.** The amount that We will pay to the Beneficiary(ies) on the death of the Insured while this Policy is in force.

**INSURED.** The person whose life is covered by this Policy.

**ISSUE DATE.** The date the Policy was issued by the Company, as shown on the Policy Data Page, which begins the Contestable and Suicide periods.

**JOINT OWNER.** If there is more than one Owner, each Owner shall be a Joint Owner of the Policy. Joint Owners have equal ownership rights and each must authorize any exercise of those ownership rights.

**OWNER ("YOU," "YOUR").** The person or entity shown on the Policy Data Page who is entitled to exercise all rights and privileges under this Policy. If Joint Owners are named all references to Owner shall mean Joint Owners.

**POLICY.** This renewable and convertible term life insurance contract between You and Us.

**POLICY ANNIVERSARY.** An annual anniversary of the Policy Date.

**POLICY DATE.** The date We begin charging Premium.

**POLICY YEAR.** The twelve-month period immediately following the Policy Date or any Policy Anniversary.

**PREMIUM(S).** Considerations paid into this Policy by or on behalf of the Owner.

## DEFINITIONS (CONT'D)

**RIDER.** A form which supplements the Policy or which provides additional benefits. When a Rider is attached to the Policy it becomes a part of the Policy and is subject to all the terms of the Policy unless We state otherwise in the Rider.

**SERVICE CENTER.** The Company's address and telephone number for inquiries about Your Policy or any complaints You may have. These are specified on the Policy Data Page or as may be designated by Us from time to time.

**WE, OUR, US, THE COMPANY, JNL.** Jackson National Life Insurance Company.

**WRITTEN REQUEST.** Information or instructions given to Us in writing in a form satisfactory to Us that includes all required signatures.

## GENERAL PROVISIONS

**ASSIGNMENT.** The Owner may assign this Policy while it is in force subject to the interest of any assignee or irrevocable beneficiary. We will not be bound by any assignment unless it is in writing and has been recorded at the Company's Service Center. An assignment will take effect when recorded by the Company. We are not responsible for any payment made before an assignment is recorded. We assume no responsibility for the validity or tax consequences of any assignment. If You make an assignment, You may have to pay income tax. You are encouraged to seek legal and/or tax advice.

**CONFORMITY WITH STATE LAWS.** This Policy will be governed by the law of the state in which it is issued for delivery. Any provision that is in conflict with the law of such state is amended to conform to the minimum requirements of such law.

**CONTESTABILITY.** All statements made in the application will, in the absence of fraud, be deemed representations and not warranties. No statement will void this Policy or be used as a defense to a claim for benefits unless it is contained in the written application. This Policy may not be contested after it has been in force during the lifetime of the Insured for two years from the Issue Date except for nonpayment of any required Premium.

A reinstated or modified Policy may not be contested after it has been in force during the lifetime of the Insured for two years from the reinstatement or modification date except for nonpayment of any required Premium. A reinstated or modified Policy may only be contested with respect to material misrepresentations made in the application for such reinstatement or modification.

If the Insured dies during a Contestable Period, the Company may investigate the circumstances surrounding the original application, reinstatement application, or application for modification.

As part of the contestable investigation, the Company may require the Beneficiary(ies) to sign certain authorizations necessary for release of medical records and other information relating to the Insured.

**ENTIRE CONTRACT.** The consideration for issuing this Policy is the application and the payment of the first Premium. The Policy, application, supplemental applications, and any applicable Riders, endorsements and amendments together make up the entire contract between You and the Company.

**GRACE PERIOD.** Any Premium after the first which is not paid on or before the date it becomes due is in default. A grace period of 31 days from the Premium due date will be allowed for payment of Premium in default. This Policy will continue in force during this period. If death occurs during the grace period, the portion of any due and unpaid Premium will be deducted from the Death Benefit.

**MISSTATEMENT OF AGE OR SEX.** If the age or sex of the Insured has been misstated on the application, the benefits available under this Policy will be those which the Premiums paid would have purchased at the correct age and sex.

## GENERAL PROVISIONS (CONT'D)

**NONPARTICIPATING.** This Policy does not pay dividends nor does it share in the surplus or revenue of the Company.

**NON-WAIVER PROVISION.** Any change or waiver of the Provisions of this policy must be in writing and signed by the President, a Vice President, the Secretary, or Assistant Secretary of the Company. No broker or producer has authority to change or waive any Provision of this Policy.

**PAYMENT OF PREMIUMS.** No coverage under this Policy will be provided prior to the payment of the required Premium. Premiums, other than the first, must be paid in advance to Us at Our Service Center or to an agent of the Company. A receipt signed by an officer of the Company will be provided upon request. The Premium shown in the Policy Data Page is the Initial Annual Premium. To determine the Premium for modes other than annual, multiply the Premium by the appropriate modal factor stated in the Policy Data Page. If You elect to pay Premiums other than annually, the total Premiums paid will be greater than the annual Premium. The Owner may request a change in the frequency of Premium payments. Such a request must be in writing and will only be effective upon approval by the Company. The payment of any Premium will not continue the Policy in force longer than the period for which Premium payment is made, except as provided in this Policy.

**POLICY MODIFICATION.** You may request a change in this Policy to add or delete benefits or change Your risk classification. Any modification that requires new evidence of insurability will become incontestable during the lifetime of the Insured after two years from the date of such modification. The basis for contesting any modification will be limited to any representations made in the request for such modification.

**POLICY YEARS.** The first Policy Year will commence on the Policy Date stated in the Policy Data Page. Policy Years after the first will commence on the anniversaries of the Policy Date.

**PREMIUM CHANGE PROVISION.** The maximum Premiums, if paid annually, are shown in the Schedule of Guaranteed Annual Premiums. The Guaranteed Premium Term is shown on the Policy Data Page. The Company may charge less than the guaranteed Premium. Any change in Premium will be on a uniform basis by class and based on future economic conditions, mortality, persistency, and expenses. The Company will not require any additional Premium because of a deterioration of the Insured's health or a change in the Insured's occupation. Premium changes will not be made more frequently than once a year. Premium for any Accidental Death Benefit or Waiver of Premium benefit may change at the same time as the base Policy Premium. This section will not affect any Premium for any other attached Riders to this Policy.

**PROOF OF AGE, SEX OR SURVIVAL.** The Company may require satisfactory proof of the correct age or sex, as applicable, of the Insured at any time. If any payment under this Policy is contingent upon the Owner or Beneficiary being alive, the Company may require satisfactory proof of such survival.

## GENERAL PROVISIONS (CONT'D)

**REINSTATEMENT.** If this Policy lapses it may be reinstated within five years of the date of lapse, subject to the following:

1. Your written request for reinstatement is received at Our Service Center;
2. You provide Us with satisfactory evidence of the Insured's insurability at the same risk classification as at the time of issuance of the Policy;
3. You provide payment of all past due Premium with interest from the due date of each Premium. Interest at the rate of 6% per year compounded annually on past due Premiums will be payable to the date of reinstatement.

The effective date of the reinstatement is the date of approval by Us of Your application for reinstatement.

**SUICIDE.** If the Insured dies by suicide, while sane or insane, within two years from the Policy Date of the Policy, Our liability with respect to this Policy will terminate. We will return to You an amount equal to the Premiums paid.

**WRITTEN NOTICE.** Any notice We send to the Owner will be sent to the Owner's last known address unless the Owner requests otherwise in writing. Any written request or notice must be sent to the Service Center, unless We advise You otherwise. You are responsible for promptly notifying the Company of any address change.

## OWNERSHIP AND BENEFICIARY PROVISIONS

**OWNER.** During the lifetime of the Insured, all rights under this Policy belong to the Owner(s). The Owner may exercise these rights subject to the interests of any assignee or irrevocable Beneficiary. If the Policy has Joint Owners, the consent of all Owners is required for Policy changes. Upon the death of a Joint Owner, all rights shall be vested in the surviving Owner(s).

Unless it is otherwise provided in the application for this Policy or in an endorsement to this Policy, the Insured will be the Owner.

**Change of Ownership.** The ownership of this Policy may be changed by the Owner(s) at any time during the Insured's lifetime. Any change must be made by Written Request to the Service Center. The change will apply to any payments made or actions taken by Us after such request is accepted and recorded at Our Service Center. We reserve the right to require that this Policy be presented for endorsement of any change.

**BENEFICIARY.** The Owner may designate the Beneficiary(ies) to receive any amount payable under this Policy on the Insured's death. The original Beneficiary(ies) will be named in the application and recorded on the Policy Data Page of this Policy. If two or more persons are named as Primary Beneficiary(ies), those surviving the Insured will share equally unless otherwise stated.

**Change of Beneficiary.** During the Insured's lifetime the Owner may change the Beneficiary(ies) by submitting a Written Request to the Service Center, subject to any irrevocable Beneficiary(ies) designation or any existing assignment. A change will take effect on the date the request is signed. However, the Company is not liable for any payment made or action taken before the Company records the change.

**Death of Beneficiary.** The interest of any Beneficiary who dies before the Insured will end at the death of the Beneficiary. The interest of any Beneficiary who dies at the time of or within ten days after the death of the Insured will also end if no Death Benefit Proceeds have been paid to the Beneficiary. If no Primary Beneficiary(ies) survives the Insured, benefits will be paid to any surviving Contingent Beneficiary(ies), if named, in equal shares, unless otherwise stated. If there are no surviving Beneficiaries at the death of the Insured, the Death Benefit Proceeds will be paid to the Owner, or the Owner's estate if the Owner does not survive the Insured.

## CONVERSION PROVISIONS

While this Policy is in force, it may be converted to any permanent life insurance policy made available by the Company for conversion. Evidence of insurability will not be required. Conversion may occur at any time prior to the Latest Conversion Date shown on the Policy Data Page. The new policy will be issued using the same Premium classification as this Policy for the amount of Death Benefit then in effect. If the request is for benefits greater than those contained in this Policy, the Company may require evidence of insurability. Conversion will require a Written Request from the Owner and payment of any required Premium. At least one plan of insurance, equal to the amount of Death Benefit provided by this Policy, will always be available for conversion.

The policy date of the new policy will be the date of conversion. The new policy premium will be based on the premium rate for the Attained Age and premium classification of the Insured in accordance with current premium rates and policy forms in use on the date of conversion. The amount of death benefit must not be less than the minimum issued by the Company on the plan desired. The Contestability and Suicide periods of the new policy will be measured from the Issue Date of this Policy. However, if the amount of death benefit is greater than that which was issued on this Policy, the difference will be subject to a new Contestability and Suicide period.

Any Riders providing benefits attached to this Policy will be included in the new policy only with the consent of the Company.

## DECREASING TERM PROVISIONS

Within 60 days before any Policy Anniversary after the end of the Guaranteed Premium Term, the Owner has the right to elect to continue payment of the current Premium in lieu of paying the increased Premium next due. In such event, the Death Benefit of this Policy will be reduced to the product of

1. The Death Benefit specified in the Policy Data Page times
2. The ratio of (i) the base Premium for the Attained Age one year prior to the date this option is elected; to (ii) the base Premium for the Attained Age on the Policy Anniversary.

Such election will continue in force and successive decreases will be made in the Death Benefit of this Policy as are appropriate on each Policy Anniversary. The base Premium is the total Premium that would be charged for this Policy for the Death Benefit specified in the Policy Data Page less any Policy fee and any extra Premium for attached Riders. A schedule showing the new Death Benefits will be sent to the Owner.

## DEATH BENEFIT PROVISIONS

**GENERAL.** If the Insured dies while this Policy is in force, and subject to any rights We have to contest the Policy, We will pay the Death Benefit Proceeds to the Beneficiary within 60 days after We receive at Our Service Center due proof of the Insured's death, as well as all other requirements We deem necessary.

**AMOUNT OF PROCEEDS.** Proceeds payable at the death of the Insured will be the sum of:

- The Death Benefit, plus
- Any insurance on the life of the Insured provided by benefit Riders; plus
- Any Premiums paid for coverage beyond the Policy month in which the death of the Insured occurs.

Less:

- The portion of any Premium due and unpaid.

If the Insured dies during a Contestable Period, We will complete Our investigation and determination of the validity of the Policy under applicable law before any Death Benefit Proceeds are paid.

We will add interest to the resulting amount owed for the period from the date of death to the date of payment, as required by applicable law. We will compute the interest at a rate We determine, but not less than the rate required by applicable law.

**PROTECTION OF BENEFITS.** No Beneficiary may commute, encumber, alienate or assign any payment under this Policy before it is due. To the extent permitted by law, no payment will be subject to the debts, contracts, or engagements of any Beneficiary. In addition, to the extent permitted by law, no payment will be subject to any judicial process to levy You or to attach the same for payment thereof.

**PAYMENT OF BENEFITS.** Any amount payable to a Beneficiary at the death of the Insured under this Policy will be paid in a single lump-sum payment. In addition, unless specifically requested otherwise, We may elect to deposit the amount payable into an account from which all, or any portion, of the amount deposited may be withdrawn by the Beneficiary at any time.

## SCHEDULE OF GUARANTEED ANNUAL PREMIUMS

**(Assumes annual Premium payments. If Premiums are paid other than annually, the total annual Premiums will be higher than the annual Premium shown.)**

Type of Policy: Renewable Term to Age 95 With Premium Change Provision

Policy Number: 0073165880 Age: 54 FEMALE
Insured: Kathryn J Bartek
Risk Classification: PREFERRED PLUS Death Benefit: $400,000

Policy Date: April 6, 2012

(Please turn to back of page)

POLICY EXPIRES: April 6, 2053

RENEWABLE TERM LIFE INSURANCE TO AGE 95 WITH PREMIUM CHANGE PROVISION. MAXIMUM PREMIUMS AS SHOWN IN SCHEDULE. CONVERTIBLE PRIOR TO LATEST CONVERSION DATE SHOWN ON THE POLICY DATA PAGE. NONPARTICIPATING.

## SCHEDULE OF GUARANTEED ANNUAL PREMIUMS

**(Assumes annual Premium payments. If Premiums are paid other than annually, the total annual Premiums will be higher than the annual Premium shown.)**

| | | | |
|---|---|---|---|
| April 6, 2012 | $674.00 | April 6, 2033 | $21,362.00 |
| April 6, 2013 | $674.00 | April 6, 2034 | $23,434.00 |
| April 6, 2014 | $674.00 | April 6, 2035 | $25,714.00 |
| April 6, 2015 | $674.00 | April 6, 2036 | $28,234.00 |
| April 6, 2016 | $674.00 | April 6, 2037 | $30,954.00 |
| April 6, 2017 | $674.00 | April 6, 2038 | $33,994.00 |
| April 6, 2018 | $674.00 | April 6, 2039 | $38,122.00 |
| April 6, 2019 | $674.00 | April 6, 2040 | $42,778.00 |
| April 6, 2020 | $674.00 | April 6, 2041 | $47,418.00 |
| April 6, 2021 | $674.00 | April 6, 2042 | $52,546.00 |
| April 6, 2022 | $8,210.00 | April 6, 2043 | $58,322.00 |
| April 6, 2023 | $8,890.00 | April 6, 2044 | $63,562.00 |
| April 6, 2024 | $9,642.00 | April 6, 2045 | $71,450.00 |
| April 6, 2025 | $10,466.00 | April 6, 2046 | $79,690.00 |
| April 6, 2026 | $11,386.00 | April 6, 2047 | $88,474.00 |
| April 6, 2027 | $12,394.00 | April 6, 2048 | $96,570.00 |
| April 6, 2028 | $13,506.00 | April 6, 2049 | $100,666.00 |
| April 6, 2029 | $14,786.00 | April 6, 2050 | $108,722.00 |
| April 6, 2030 | $16,218.00 | April 6, 2051 | $120,674.00 |
| April 6, 2031 | $17,770.00 | April 6, 2052 | $135,762.00 |
| April 6, 2032 | $19,474.00 | | |




## TERMINAL ILLNESS RIDER

**Death benefits, cash values and loan values will be reduced if an accelerated benefit is paid. An accelerated benefit may be taxable. As with all tax matters, a personal tax advisor should be consulted.**

This rider is made a part of the policy to which it is attached. The terms of your policy also apply to this rider except as they are changed by the terms of this rider.

### ACCELERATED BENEFIT

**AMOUNT OF BENEFIT** The amount of accelerated benefit provided shall be:

1) As requested by the Owner up to 100% of the policy face amount subject to an aggregate maximum of $250,000;

Less:

1) an actuarial discount for 12 months' interest. The interest rate used in the calculation will be as declared by the Board of Directors but not greater than 8%; and
2) any outstanding policy loan and loan interest due and unpaid, multiplied by the benefit ratio; and
3) any premium due and unpaid during a policy's grace period which applies to a period before the date of entitlement; and
4) an administrative expense charge as determined by the Company. This charge will not exceed $100.

**ADJUSTMENTS TO THE POLICY** After the payment of an accelerated benefit, the policy face amount will be subject to the following adjustments:

1) The face amount, value accumulation, guaranteed cash value, actual cash value and gross premium will be reduced by the benefit ratio.
2) Any outstanding loan and loan interest will be reduced by the portion of the loan repaid by any payment of a benefit under this rider.
3) If the benefit ratio is 100%, this policy will terminate.

Gross premium includes any additional riders, policy fees and any extra premium for special premium class. Future policy values will be calculated according to the methods described in the policy using the reduced amounts described above.

**LIMITATIONS** No benefit will be provided by this rider if terminal illness results from intentionally self-inflicted injuries. Any amount payable during a contestable period, due to suicide, will be reduced by any previously paid accelerated benefit.

**BENEFIT ENTITLEMENT**

1) The accelerated benefit under this rider is payable only once, regardless of the subsequent occurrence of the same or a different condition.
2) The policy and this rider must be in force.
3) The terminal illness must first manifest itself on or after the 30th day following the issue date of the rider.
4) The accelerated benefit shall be payable to the Owner.
5) After the payment of an accelerated benefit, the Company will send the Owner a statement showing the effect of the payment on this policy.
6) If the Insured dies before an accelerated benefit is paid, no payment will be made under this rider.
7) The Company must receive the consent of all irrevocable beneficiaries and all assignees.

**CLAIM REQUIREMENTS** Written proof of the Insured's terminal illness must be received by the Company before a benefit will be considered under this rider. Written proof includes a properly completed claim form and a physician's statement satisfactory to the Company. The Company reserves the right to request additional medical information from any physician or institution which may have provided treatment for the terminal illness. The Company may require, at its expense, an additional examination by a physician of its choice.

Written notice of claim may be given to the Company anytime after the date the Insured develops a terminal illness. Notice sent by, or on behalf of, the Insured to Jackson National Life Insurance Company, 1 Corporate Way, Lansing, MI, 48951, will be considered notice to the Company.

**DEFINITIONS**

**Benefit Ratio** - is the result of dividing (a) by (b) where:

a) is the requested accelerated death benefit; and
b) is the policy face amount.

**Physician** - means an individual who is licensed to practice medicine and treat illness or injury in the state in which treatment is received and who is acting within the scope of that license. The term physician only refers to a physician licensed and currently practicing in the United States of America. Physician does not include:

1) the Insured;
2) the Owner;
3) a person who lives with the Insured or Owner;
4) a person who is part of the Insured's or Owner's immediate family.

**Immediate Family** - means the spouse, child, brother, sister, parent or grandparent of the Insured or the Owner.

**Physician's Statement** - means a written statement acceptable to the Company and signed by a physician which:

1) gives the physician's diagnosis of the Insured's noncorrectable medical condition; and
2) states with reasonable medical certainty, the noncorrectable medical condition will result in the death of the Insured within 12 months or less from the date of the physician's statement. This statement must take into consideration the ordinary and reasonable medical care, advice and treatment available in the same or similar communities.

**Policy Face Amount** - includes any policy or rider which provides a death benefit on the Insured, excluding the supplementary rider for accidental death benefit. The aggregate $250,000 is a maximum amount which includes all policies to which this rider is attached.

**Terminal Illness** - is a noncorrectable medical condition, which will result in the death of the Insured within 12 months or less from the date of the physician's statement.

**TERMINATION** This rider will stop on the earliest of the following:

1) whenever an accelerated benefit is paid;
2) the date any nonforfeiture option in the policy becomes effective;
3) when the policy to which this rider is attached is in default past the grace period;
4) on the date the Company receives a written request by the Owner to stop this rider.

**CONSIDERATION** This rider is issued in consideration of the application. There is no charge for this rider prior to the time a benefit is paid under this rider.

This benefit is made available to the Owner on a voluntary basis. The Owner is not eligible for benefits under this rider if required by law to use this option to meet the claims of creditors, whether in bankruptcy or otherwise. The Owner is also not eligible for benefits under this rider if required by a government agency to use this option in order to apply for, obtain, or keep a government benefit or entitlement.

**ISSUE DATE** The issue date of this rider is the issue date of the policy to which it is attached unless changed by endorsement.

**Signed for the**
**Jackson National Life Insurance Company**

**President and Chief Executive Officer**

Received 03/22/2012 06:51:46 Box DCC4972 056495 3

# LIFE APPLICATION

JACKSON™
NATIONAL LIFE INSURANCE COMPANY
Home Office: 1 Corporate Way
Lansing, Michigan 48951
www.jackson.com

USE DARK INK ONLY - ALL PAGES MUST BE COMPLETED FOR "GOOD ORDER"

This is an application for: ☒ Primary Insured ☐ Other Insured

- PLEASE PRINT.
- Complete for all life insurance policies.
- A separate application is required for each proposed insured.
- It is required for Good Order that you provide a physical address.
- Only include mailing address if different from physical address.

## Proposed Insured

First Name: Kathryn
Middle Name: J
Last Name: Bartek
Date of Birth (mm/dd/yyyy): 11/18/57

Social Security Number: 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
Gender: ☐ M ☒ F
Email Address:
Marital Status: ☒ M ☐ S ☐ W ☐ D

Physical Address (No P.O. Boxes): 1715 Creek St
U.S. State or Foreign Country of Birth:

City: Falls City
State: NE
ZIP Code: 68355

Mailing Address: Same as above
City:
State:
ZIP Code:

Cell - 402-245-2869 - Best "

Driver's License Number: G19000581
D.L. State: NE
Telephone Numbers (including area code): DAY: (402) 245-6571 EVENING: (402) 245-4172
Best Time to Call: ☐ Day ☒ Evening

Employer: Community Med Cent
Occupation: R.N.
Annual Income: $60,000
Net Worth: $300,000

## Policy Owner

- Complete this section if the Owner is other than the proposed insured.
- Complete Form X1006 for multiple Owners.
- If Owner is a Trust, Trustee Certification form X5335 or trust documents are required with application.

Individual Name (First, Middle, Last) or Non-Natural Owner/Entity Name:
Date of Birth (mm/dd/yyyy):

Physical Address (No P.O. Boxes):
Social Security/Tax I.D. Number:

City:
State:
ZIP Code:
Relationship to Insured:

Mailing Address:

City:
State:
ZIP Code:

Email Address:
Telephone Numbers (including area code): DAY: ( ) EVENING: ( )
Best Time to Call: ☐ Day ☐ Evening

LONG-TERM SMART℠

## Beneficiaries

* It is required for Good Order that the Death Benefit Percentage be whole numbers and must total 100% for each beneficiary type.
* For additional beneficiaries, please attach a separate sheet, signed and dated by the Owner, which includes names, percentages, and other required information.

[X] Primary — 100 % Percentage of Death Benefit

Individual Name (First, Middle, Last) or Non-Natural Entity Name: Thomas A. Bartek

Social Security/Tax I.D. Number: 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 | Date of Birth (mm/dd/yyyy): 12/17/57 | Relationship to Insured: [X] Spouse [ ] Other ______

[ ] Primary [X] Contingent — 25 % Percentage of Death Benefit To Each Contingent

Individual Name (First, Middle, Last) or Non-Natural Entity Name: Amanda K. Young; Laura E. Harzendorff

Social Security/Tax I.D. Number: 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; 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 | Date of Birth (mm/dd/yyyy): 8/5/81; 3/24/86 | Relationship to Insured: [ ] Spouse [X] Other Children

[ ] Primary [X] Contingent — 25 % Percentage of Death Benefit To Each Contingent

Individual Name (First, Middle, Last) or Non-Natural Entity Name: Jacob A. Bartek; Clinton J. Bartek

Social Security/Tax I.D. Number: 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; 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 | Date of Birth (mm/dd/yyyy): 10/12/88; 11/18/91 | Relationship to Insured: [ ] Spouse [X] Other Children

## Products, Benefits and Riders

* Specify the full name of the product.
* Complete Form X3250 for CIR riders.

**Product**

Product Name: 10yr Level Term

Death Benefit: $ 250,000.00

Quoted Rate/Class: Preferred Plus

[ ] Backdate to Save Age

**Complete this section for all products except Variable Universal Life (VUL). If applying for VUL, complete form V3077.**

**Universal Life (UL) Only** (Select one.)

[ ] Option A (level death benefit)
[ ] Option B (increasing death benefit) (if available)
[ ] Option C (including Premiums less partial surrenders)(if available)

**Generations UL Only**

No Lapse Option through Age _____.

Pay Premium to Age _____.

**Benefits/Riders** (if available on product)

[ ] Primary Insured Term Companion Policy
Product Name: ______________
Death Benefit: $__________
[ ] Other Insured Term Insurance Rider (please complete separate application)
[ ] Children's Insurance Rider (CIR) __ Units
[ ] Accidental Death Benefit $__________
[ ] Waiver of Premium
[ ] Waiver of Specified Premium
Amount to be waived annually $______
[ ] Other: ______________

LONG-TERM SMART

## Planned Premium and Payment Information

- If PAC option is selected for initial Premium, Temporary Insurance Agreement, Form X3500, MUST be completed.

**Planned Premium**
Amount $ 440.00

**Payment Mode:** ☐ Monthly (PAC only) ☐ Quarterly (PAC) ☐ Quarterly (Direct Bill) ☐ Semiannually ☒ Annually ☐ Lump Sum $____

Payment of Premiums on a basis other than annually will result in a higher total annual Premium. This does not apply to Universal Life or Variable Universal Life products.

If PAC option is selected, complete the Premium Payment Charge Authorization (PAC), Form X0298. We will draft the initial Premium, if instructed to do so, upon receipt of the application. If a policy is approved as applied for or accepted if approved other than applied for, we will draft subsequent payments once the Policy is issued.

Is the Premium paid by the proposed Insured or Owner? ☒ Yes ☐ No If "No," please complete the following:

| Payor's Name | Address (number and street, city, state, ZIP code) |
|---|---|
| | |

List Bill Group Number (if applicable): ____

Military/Government Allotment Branch/Number (if applicable): ____

## Initial Premium

**Make check payable to: Jackson National Life Insurance Company®** Issue

Total Premium Submitted: $ 0 Check No.: C.O.D.

Applied to This Application: $____

Balance (if any) Applied to (name):____

## Life Insurance History

What is the total amount of personal or business life insurance in force on the proposed Insured's life with Jackson℠ or another company? $ 100,000.

Is any of this amount business insurance? ☐ Yes ☒ No If "Yes," what amount? $____

What is the total amount of personal and business life insurance pending or for which the proposed Insured intends to apply on his/her life with Jackson or any other company? $ 350,000.

Is any of this amount business insurance? ☐ Yes ☒ No If "Yes," what amount? $____

## Business Insurance

- Complete this section only if the application is for business insurance purposes.

**Type of Business (check one):**
☐ Sole Proprietorship ☐ Partnership
☐ Corporation
☐ Other (describe):____

**Purpose of the Insurance (check one):**
☐ Key Person ☐ Buy/Sell
☐ Loan ☐ Other (describe):____
☐ Employee Benefit

Approx. Business Net Worth: $____ Approx. Business Net Annual Income: $____

Proposed Insured's Percentage Ownership:____%

Amount(s) and Purpose(s) of Other Business Insurance, In Force or Applied For, on the proposed Insured:

$____ Purpose:____

$____ Purpose:____

Is business insurance carried by other owners, officers, partners, or key persons? ☐ Yes ☐ No

If "Yes," provide the names, titles, amount carried and/or applied for, purpose and insurance company on a separate sheet and attach to this application.

Received 03/22/2012 06:51:46 Box DCC4972 056495 4

LONG-TERM SMART

## Certification in Lieu of Illustration

**For Illustrated Products only (where required).**

**Producer/Representative**
(Check all appropriate boxes.)

- [x] No illustration was shown or given to the Applicant.
- [ ] The Policy illustrated was other than applied for.
- [ ] An illustration was electronically displayed, and no paper copy was provided.

**Applicant**
(Check the appropriate box.)

- [x] No illustration conforming to the Policy applied for was shown or given to me at the time of application.
- [ ] An electronic illustration was shown, but no paper copy was provided.

**For illustrated policies, an illustration conforming to the Policy as issued will be provided no later than the time of Policy delivery.**

## Statement Regarding Existing Policies or Annuity Contracts

It is required for Good Order that this entire section be completed.

I (We) certify that: (check one)

- [ ] I (We) do not have any existing life insurance policies or annuity contracts.
- [x] I (We) do have existing life insurance policies or annuity contracts.

**Notice to Producer/Representative: If the Applicant does have existing life insurance policies or annuity contracts you must present and read to the Applicant (where required) the *Replacement of Life Insurance or Annuities (X0512 - state variations may apply)* and return the notice, signed by both the Producer/Representative and the Applicant, with the Application.**

**COMPLETE X0512 WHERE REQUIRED**

## Replacement

COMPLETE X0512 "REPLACEMENT OF LIFE INSURANCE OR ANNUITIES" WHERE REQUIRED (must be dated on or before the Application Sign Date to be in Good Order).

Are you replacing an existing life insurance policy or annuity contract? Yes [ ] No [x] If "Yes," complete the following Company information.

| Company Name | Policy/Contract # | Policy/Contract Date (mm/dd/yyyy) | Death Benefit Amount | Sec. 1035 Exchange (Y,N) |
|---|---|---|---|---|
| | | / / | $ | |
| | | / / | $ | |
| | | / / | $ | |

To add additional policies, use Life Supplement form X3150.

Are there any agreements in place or have there been any discussions to sell any policy issued by this or any other pending application in any secondary market transaction? [ ] Yes [x] No
If "Yes," please provide details using Life Supplement form X3150.

Is any part of the Premium for this proposed Policy financed by a loan or other premium financing arrangement? [ ] Yes [x] No If "Yes," please provide details using Life Supplement form X3150.

## Authorized Caller

- If you want to authorize an individual other than your Producer/Rep to receive Policy information via telephone, please list that individual's information here.

| First Name | Middle Name | Last Name |
|---|---|---|
| | | |

| Social Security/Tax I.D. Number | Date of Birth (mm/dd/yyyy) |
|---|---|
| | / / |

| First Name | Middle Name | Last Name |
|---|---|---|
| | | |

| Social Security/Tax I.D. Number | Date of Birth (mm/dd/yyyy) |
|---|---|
| | / / |

## Electronic Delivery Authorization

- Check the boxes next to the types of documents you wish to receive electronically. If an email address is provided in this section, but no document type is selected, the selection will default to 'All Documents.

**I agree to receive documents electronically:**

☐ **ALL DOCUMENTS**

☐ Quarterly and/or Annual statements
☐ Periodic and immediate confirmation statements
☐ Annual and Semi-Annual reports
☐ Prospectuses and prospectus supplements
☐ Proxy and other voting materials
☐ Other Policy-related correspondence

This consent will continue unless and until revoked and will cover delivery to you in the form of a compact disc, by email or by notice to you of a document's availability on a website. Certain types of correspondence may continue to be delivered by the United States Postal Service for compliance reasons. Registration on Jackson's website (www.jackson.com) is required for electronic delivery of Policy-related correspondence.

I (We) do ☐ do not ☒ have ready access to computer hardware and software that meet the below requirements. My email address is:________________________ I (We) will notify the company of any new email address.

The computer hardware and software requirements that are necessary to receive, process and retain electronic communications that are subject to this consent are as follows: To view and download material electronically, you must have a computer with Internet access, an active email account, Adobe Acrobat Reader and/or a CD-ROM drive. If you don't already have Adobe Acrobat Reader, you can download it free from www.adobe.com.

**Electronic Delivery Information:** There is no charge for electronic delivery, although you may incur the costs of Internet access and of such computer and related hardware and software as may be necessary for you to receive, process and retain electronic documents and communications from Jackson. Please make certain you have given Jackson a current email address. Also let Jackson know if that email address changes. We may need to notify you of a document's availability though email. You may request paper copies, whether or not you consent or revoke your consent for electronic delivery, at any time and for no charge. Please contact the appropriate Jackson Service Center or go to www.jackson.com to update your email address, revoke your consent to electronic delivery, or request paper copies. Even if you have given us consent, we are not required to make electronic delivery and we have the right to deliver any document or communication in paper form. This consent will need to be supplemented by specific electronic consent upon receipt of any of these means of electronic delivery or notice of availability.

Received 03/22/2012 06:51:46 Box DCC4972 058495 5

LONG-TERM SMART

## Personal Information and Non-Medical History

• The Company may require additional information in the form of questionnaires regarding travel (X1684), drug and alcohol use (X3015), hazardous racing (X3016), aviation (X3018), hazardous activities (X3017), and tobacco use (X1682). We encourage completion of questionnaires or a call to Underwriting in order to expedite the file.

1. Does the proposed Insured plan to reside or travel outside of the U.S. or Canada within the next two years? ☐ Yes ☒ No
   If "Yes," please indicate when you will reside or travel ______ where ______, for how long ______, how often ______ and for what purpose ______ the proposed Insured intends to travel.
2. Of what country is the proposed Insured a citizen (indicate all that apply if the proposed Insured has dual citizenship)? ☒ U.S. ☐ Canada ☐ Other ______
   If the proposed Insured is a citizen of a country other than the U.S. or Canada, how many years has the proposed Insured been in the U.S. or Canada ______, what is the proposed Insured's visa type ______, visa number ______, and visa expiration date ______?
3. Has the proposed Insured driven in the past but is no longer driving today? ☐ Yes ☒ No
4. Has the proposed Insured, in the past ten years:
   a. Been convicted of, or admitted responsibility for, two or more driving offenses, had their driver's license suspended or revoked or been convicted of reckless driving or driving under the influence of any controlled substance or alcohol? ☐ Yes ☒ No
   b. Engaged in, or plan to engage in, motorized racing, hang gliding, ballooning, sky diving, aviation, parachuting, cliff diving, mountain or rock climbing, skin or scuba diving, or bungee jumping? ☐ Yes ☒ No
   c. Been convicted of a felony, or been imprisoned or on probation? ☐ Yes ☒ No
   d. Participated in any regular exercise program or performed volunteer work for any charity, community, or social organization? ☒ Yes ☐ No
5. Has the proposed Insured ever used any form of tobacco? ☐ Yes ☒ No
   a. If "Yes":
      1. When was the month and year of last use (mm/yyyy)? ____/______
      2. How many years has (did) the proposed Insured use(d) tobacco? ____
      3. What form of tobacco and methods of ingestion has the proposed Insured used?
         Check all that apply:
         ☐ Cigarettes ☐ Cigars ☐ Chewing tobacco or any smokeless form
         ☐ Bedes ☐ Hookah ☐ Pipe
         ☐ Other form of tobacco or any nicotine product (describe): ______
      4. If cigarettes have been used, on average how many packs per day were consumed? ____
      5. If cigars have been used, on average how many per month were consumed? ____
6. Has the proposed Insured ever had a life or disability insurance application rated, postponed, or declined? ☐ Yes ☒ No

## Non-Medical History Details

• For each "Yes" answer, include question number, dates and details.

______

______

______

______

Received 03/22/2012 06:51:46 Box DCC4972 056495 6

LONG-TERM SMART

## Primary Health Care Provider or Personal Physician

| Name (If none, check here: ☐) Dr Allan Tramp | Telephone Number (including area code) (402 245-3232 |
|---|---|
| Address (office name, number and street, city, state, ZIP code) 1423 Stone Falls City, NE 68055 | Date of Last Visit (mm/dd/yyyy) 2 / 3 / 12 |
| Reason for Last Visit Remove non cancerous Skin lesion | Results Removed / Benign. |

## Personal Medical History

- To expedite underwriting we encourage the proposed Insured to answer these questions even if an examination is required.
- With the exception of Question 7., these questions do not refer to any condition resulting from AIDS (Acquired Immune Deficiency Syndrome), HIV (Human Immunodeficiency Virus), or an AIDS-related condition.

☑ Please see my medical examination for all answers in this section.
☑ Please send my laboratory results to me (if regulation allows).

1. Please enter the proposed Insured's height: ____ ft. ____ in. and weight: ____ lbs.
2. Has the proposed Insured ever been treated for, diagnosed with, or had indications of one or more of the following:
   a. Cancer, tumor, or cysts; any disorder of the lymph glands or nodes? ☐ Yes ☐ No
   b. Diabetes, metabolic syndrome; any disease or disorder of the pancreas? ☐ Yes ☐ No
   c. Stroke, high blood pressure, high cholesterol or lipids, heart murmur; any disease or disorder of the heart or blood vessels? ☐ Yes ☐ No
   d. Any disease or disorder of the blood, thyroid, or any immunological disease? ☐ Yes ☐ No
   e. Seizures, mental or psychological disorder, Alzheimer's disease, dementia, memory loss or Parkinson's disease; any disease or disorder of the nervous system? ☐ Yes ☐ No
   f. Asthma, COPD, emphysema, sleep apnea; any disease or disorder of the respiratory system? ☐ Yes ☐ No
   g. Any disease or disorder of the kidneys, bladder, reproductive organs, prostate (if male), or the genitourinary system? ☐ Yes ☐ No
   h. Any disease or disorder of the liver, stomach, small intestines, colon, or the gastrointestinal system? ☐ Yes ☐ No
   i. Arthritis; any disease or disorder of the muscles, bones, spine, back, or joints? ☐ Yes ☐ No
3. Has the proposed Insured ever been hospitalized or had surgery of any kind? ☐ Yes ☐ No
4. Has the proposed Insured in the past 10 years:
   a. Been prescribed medication? ☐ Yes ☐ No
   b. Been examined or treated by any physician or medical practitioner? ☐ Yes ☐ No
   c. Used any illegal, restricted, or controlled substance, except as prescribed by a physician? ☐ Yes ☐ No
   d. Been counseled or treated for alcohol or illegal, restricted, or controlled substance abuse? ☐ Yes ☐ No
   e. Been advised by any physician or medical practitioner to have any test, procedure, surgery, consultation, or hospitalization that has not been done? ☐ Yes ☐ No
   f. Taken any herbal remedies, or alternative or complimentary medication? ☐ Yes ☐ No
   g. Required the use of a wheelchair, walker or cane? ☐ Yes ☐ No
5. Has any immediate family member died as a result of, or been diagnosed with, melanoma or any cancer or heart disease prior to age 75? (Include age at diagnosis in details below.) ☐ Yes ☐ No
6. Has any immediate family member been diagnosed with a familial or inherited disease or disorder, Huntington's Chorea, polycystic kidney disease, or familial adenomatosis polyposis (FAP)? ☐ Yes ☐ No
7. Has the proposed Insured ever been diagnosed with or treated by a medical physician for the HIV (Human Immunodeficiency Virus) Infection or been diagnosed as having AIDS (Acquired Immune Deficiency Syndrome) caused by the HIV Infection? ☐ Yes ☐ No

## Personal Medical History Details

- For each "Yes" answer, include question number, dates, details and results.

 

I (We) acknowledge that I (we) have read and understand this application in its entirety. I (We) represent to the best of my (our) knowledge and belief that all information in this application, and all additions to this application, including but not limited to, examination reports, questionnaires, supplements, and amendments, is true, complete, and correctly recorded. I (We) acknowledge that the Company will rely on this information to determine whether, and on what terms, to issue a Policy. I (We) understand that if any information is false, incomplete or incorrectly recorded, any Policy issued may be void. **I (We) agree that insurance coverage under the Policy for which I (we) am (are) applying will not take effect until the Policy Issue Date, and then only if all of the information provided in the application, and all additions to the application as referenced above, continues to be true and complete as of the Issue Date. Commencement of coverage is also subject to the following conditions: (1) if the Company does not receive the first full modal Premium within 30 days after the Issue Date, coverage will not take effect until the full Premium is received by the Company, and then only if all the information provided in the application, and any additions to the application as referenced above, continues to be true and complete as of that date; (2) if a health certificate is required, coverage will not take effect until the certificate has been truthfully and accurately completed and signed by the Insured, and reviewed and approved by the Company; (3) if the Policy Date is later than the Issue Date, coverage will not take effect until the Policy Date, and then only if all the information provided in the application, and any additions to the application as referenced above, continues to be true and complete as of the Policy Date.**

**I (We) understand that if any of the information provided in the application, or any additions to the application, including but not limited to, examination reports, questionnaires, supplements, and amendments, changes prior to coverage becoming effective as set forth above, I (we) must inform the Company in writing, and no coverage will be in effect until the Company determines whether to provide coverage and on what terms.**

I (We) understand that no Producer/Representative is authorized to accept risks or bind coverage, decide insurability, modify the application or the Policy, or waive any of the Company's rights or requirements.

*I (We) acknowledge that I (we) have read and understand the Notice of Company Information Practices in its entirety. I (We) authorize any physician, medical practitioner, hospital or medically related facility, pharmacy benefit manager, prescription database, insurance company, the Medical Information Bureau ("MIB"), credit bureau(s), Department of Motor Vehicles, friends, neighbors, employers, or any other institution or person having any records or knowledge of my (our): mental or physical health, including, but not limited to information regarding my (our) HIV status, and all test records and results; other insurance coverage; hazardous activities; character; general reputation; mode of living; finances; or vocation; to release said information to Jackson National Life Insurance Company® or its reinsurers if they choose to request such information for the purpose of verifying information on this application or to determine eligibility for insurance. I (We) understand that information obtained will be released by the Company only to reinsurers, the MIB, persons performing services in connection with my application or claim, or as lawfully required.*

*I (We) agree that this authorization is valid for 24 months, that a photocopy of it is as valid as the original and that I (we) may request a copy of this authorization. In the case where the authorization is used in connection with a claim, the authorization is valid for the duration of the claim.*

**Arkansas, Kentucky, Louisiana, Ohio and Pennsylvania residents, please note:** Any person who knowingly, and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Colorado residents, please note:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company, or agent of an insurance company, who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds, shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**District of Columbia residents, please note: WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

(continued on next page)

**Signatures Required on Page 9**

**Not FDIC/NCUA insured • Not Bank/CU guaranteed • May lose value • Not a deposit • Not insured by any federal agency**

Received 03/22/2012 06:51:46 Box DCC4972 056495 7

LONG-TERM SMART 

**Notice to Applicant (continued)**

**New Jersey residents, please note:** Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**New Mexico residents, please note:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit, or knowingly presents false information in an application for insurance, is guilty of a crime and may be subject to civil fines and criminal penalties.

**Tennessee and Washington residents, please note:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines and/or a denial of insurance benefits.

**CALIFORNIA RESIDENTS, AGE 65 OR OLDER:** Prior to purchasing any life insurance or annuity product, you should understand that the sale or liquidation of any stock, bond, IRA, certificate of deposit, mutual fund, annuity, or other asset to fund the purchase of this product may have tax consequences, early withdrawal penalties, or other cost or penalties as a result of the sale or liquidation. You or your producer/representative may wish to consult an independent legal or financial advisor before selling or liquidating any assets prior to the purchase of any life or annuity product.

| Proposed Insured's Signature | Signed at (city, state) | Date Signed (mm/dd/yyyy) |
|---|---|---|
| Kathryn A. Bartek | Falls City, NE | 3 / 15 / 12 |
| **Policy Owner's Signature (If other than the Proposed Insured)** | **Signed at (city, state)** | **Date Signed (mm/dd/yyyy)** |
| | | / / |
| **Parent or Guardian's Signature (if applicable)** | **Signed at (city, state)** | **Date Signed (mm/dd/yyyy)** |
| | | / / |

**Producer/Representative Acknowledgement**

**Producer/Representative's Certification Regarding Sales Materials**

I certify that:

- [x] I did not use sales material(s) during the presentation of this Jackson product to the applicant.
- [ ] I used only Jackson-approved sales material(s) during the presentation of this Jackson product to the applicant. In addition, copies of all approved sales material(s) used during the presentation were left with the applicant.

To the best of my knowledge and belief the applicant

[x] **does** [ ] **does not**

have any existing life insurance policies or annuity contracts. (If a replacement, please provide a replacement form or other special forms where required by state law.)

I have complied with requirements for disclosures and/or replacements as necessary; and to the best of my knowledge and belief, this application

[ ] **will** [x] **will not**

replace any life insurance policy or annuity contract.

**Did you order medical requirements?** [x] **Yes** [ ] **No** **If "Yes," from whom?** Examinet

[x] **have** [ ] **have not** provided the proposed insured with the Discovery Packet.

• PLEASE PRINT

It is required for Good Order that all Producer/Rep numbers be supplied.

| Producer/Representative Signature | | Producer/Representative Name |
|---|---|---|
| William C. Jenkins | | William C. Jenkins |
| **Jackson Prod./Rep. No.** | **Date Signed (mm/dd/yyyy)** | **Producer/Representative Email Address** |
| 63271 | 3 / 15 / 12 | bjenkins@neb.rr.com |

If more than one Producer/Representative is to receive compensation on this case, please provide all Producer/Representative names, Jackson Producer/Representative numbers and percentages for each (totaling 100%).

| Producer/Representative Name | Jackson Producer/Representative No. | Percentage |
|---|---|---|
| | | % |
| | | % |

# END OF CONTRACT

EXHIBIT B

STATE OF NEBRASKA

WHEN THIS COPY CARRIES THE RAISED SEAL OF THE NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, IT CERTIFIES THE BELOW TO BE A TRUE COPY OF THE ORIGINAL RECORD ON FILE WITH THE NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, VITAL RECORDS OFFICE, WHICH IS THE LEGAL DEPOSITORY FOR VITAL RECORDS.

DATE OF ISSUANCE

07/09/2013

LINCOLN, NEBRASKA

Stanley S. Cooper
STANLEY S. COOPER
ASSISTANT STATE REGISTRAR
DEPARTMENT OF HEALTH AND HUMAN SERVICES

STATE OF NEBRASKA - DEPARTMENT OF HEALTH AND HUMAN SERVICES 13 25068

CERTIFICATE OF DEATH

1. DECEDENT'S NAME (First, Middle, Last, Suffix): Kathryn Jean Bartek
2. SEX: Female
3. DATE OF DEATH (Mo, Day, Yr): June 23, 2013
4. CITY AND STATE OR TERRITORY, OR FOREIGN COUNTRY OF BIRTH: Norfolk, Nebraska
5a. AGE-Last Birthday (Yrs): 56
5b. UNDER 1 YEAR: MOS / DAYS
5c. UNDER 1 DAY: HOURS / MINS
6. DATE OF BIRTH (Mo, Day, Yr): November 18, 1957
7. SOCIAL SECURITY NUMBER: 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
8a. PLACE OF DEATH: HOSPITAL: [X] Inpatient [ ] ER/Outpatient [ ] DOA; OTHER: [ ] Nursing Home/LTC [ ] Hospice Facility [ ] Decedent's Home [ ] Other (Specify)
8b. FACILITY NAME (If not institution, give street and number): Community Medical Center, Inc.
8c. CITY OR TOWN OF DEATH (Include Zip Code): Falls City 68355
8d. COUNTY OF DEATH: Richardson
9a. RESIDENCE-STATE: Nebraska
9b. COUNTY: Richardson
9c. CITY OR TOWN: Falls City
9d. STREET AND NUMBER: 1716 Crook Street
9e. APT. NO.:
9f. ZIP CODE: 68355
9g. INSIDE CITY LIMITS: [X] Yes [ ] No
10a. MARITAL STATUS AT TIME OF DEATH: [X] Married [ ] Never Married [ ] Married, but separated [ ] Widowed [ ] Divorced [ ] Unknown
10b. NAME OF SPOUSE (First, Middle, Last, Suffix) If wife, give maiden name: Thomas A Bartek
11. FATHER'S NAME (First, Middle, Last, Suffix): Walter J Braun
12. MOTHER'S NAME (First, Middle, Maiden Surname): Louise Woltemath
13. EVER IN U.S. ARMED FORCES? Give dates of service if Yes (Yes, No, or Unk): No
14a. INFORMANT NAME: Thomas A Bartek
14b. RELATIONSHIP TO DECEDENT: Spouse
15. METHOD OF DISPOSITION: [X] Burial [ ] Cremation [ ] Removal [ ] Donation [ ] Entombment [ ] Other (Specify)
16a. EMBALMER SIGNATURE: [signature]
16b. LICENSE NO.: 1188
16c. DATE (Mo, Day, Yr): June 26, 2013
16d. CEMETERY, CREMATORY OR OTHER LOCATION: Steele Cemetery
CITY/TOWN: Falls City
STATE: Nebraska
17a. FUNERAL HOME NAME AND MAILING ADDRESS (Street, City or Town, State): Dorr & Clark Funeral Home, 2303 Harlan Street, Falls City, Nebraska
17b. Zip Code: 68355

To Be Completed/Verified by: FUNERAL DIRECTOR

CAUSE OF DEATH (See instructions and examples)

18. PART I.

| | | Approximate interval: Onset to death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | a) Respiratory Failure | 2 days |
| Sequentially list conditions, if any, leading to the cause listed on line a. | DUE TO, OR AS A CONSEQUENCE OF: b) ALS | 15 months |
| Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | DUE TO, OR AS A CONSEQUENCE OF: c) | |
| | DUE TO, OR AS A CONSEQUENCE OF: d) | |

18. PART II. OTHER SIGNIFICANT CONDITIONS contributing to the death but not resulting in the underlying cause given in PART I:
19. WAS MEDICAL EXAMINER OR CORONER CONTACTED? [ ] YES [X] NO
20. IF FEMALE: [X] Not pregnant within past year [ ] Pregnant at time of death [ ] Not pregnant, but pregnant within 42 days of death [ ] Not pregnant, but pregnant 43 days to 1 year before death [ ] Unknown if pregnant within the past year
21a. MANNER OF DEATH: [X] Natural [ ] Homicide [ ] Accident [ ] Pending investigation [ ] Suicide [ ] Could not be determined
21b. IF TRANSPORTATION INJURY: [ ] Driver/Operator [ ] Passenger [ ] Pedestrian [ ] Other (Specify)
21c. WAS AN AUTOPSY PERFORMED? [ ] YES [X] NO
21d. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE CAUSE OF DEATH? [ ] YES [ ] NO
22a. DATE OF INJURY (Mo, Day, Yr):
22b. TIME OF INJURY: m
22c. PLACE OF INJURY (e.g. home, farm, street, factory, office building, construction site, etc.) (Specify):
22d. INJURY AT WORK? [ ] YES [ ] NO
22e. DESCRIBE HOW INJURY OCCURRED:
22f. LOCATION OF INJURY: STREET & NUMBER, APT. NO.: CITY/TOWN: STATE: ZIP CODE:

To Be Completed by: MEDICAL CERTIFIER ONLY
23a. DATE OF DEATH (Mo, Day, Yr): June 23, 2013
23b. DATE SIGNED (Mo, Day, Yr): 06/26/2013
23c. TIME OF DEATH: 6:39 A m
23d. To the best of my knowledge, death occurred at the time, date and place and due to the cause(s) stated. (Signature and Title): M. Celeste Jones PA-C 6/26/13

To Be Completed by: CORONER'S PHYSICIAN OR COUNTY ATTORNEY ONLY
24a. DATE SIGNED (Mo, Day, Yr):
24b. TIME OF DEATH: m
24c. PRONOUNCED DEAD (Mo, Day, Yr):
24d. TIME PRONOUNCED DEAD: m
24e. On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place and due to the cause(s) stated. (Signature and Title):

25. DID TOBACCO USE CONTRIBUTE TO THE DEATH? [ ] YES [X] NO [ ] PROBABLY [ ] UNKNOWN
26a. HAS ORGAN OR TISSUE DONATION BEEN CONSIDERED? [ ] YES [X] NO
26b. WAS CONSENT GRANTED? Not Applicable if 26a is NO [ ] YES [ ] NO
27. NAME, TITLE AND ADDRESS OF CERTIFIER (Type or Print): M. Celeste Jones, P.A.C. 1423 Stone St., Falls City, NE 68355

To Be Completed by: CERTIFIER

P

28a. REGISTRAR'S SIGNATURE: Stanley S. Cooper
28b. DATE FILED BY REGISTRAR (Mo, Day, Yr): JUL - 5 2013

2013-2443